Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 120 | **DATE** | March 26, 2002 |
| **CASE TITLE** |  | Al-Oumi v. Yanni, et al. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment as to Counts II-IV of his Complaint (doc. #14);
Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim (doc. #15)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for partial summary judgment on his complaint (doc. #14) is **DENIED**. Plaintiff's motion for summary judgment on Defendant's counterclaim (doc. #15) is **GRANTED** as to Count V and **DENIED** as to Counts I-IV. Status hearing set for April 16, 2002 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 9 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 02 MAR 28 PM 3:05 | date mailed notice | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



YASEEN A.Y. AL-OUMI,
    Plaintiff/Counter-Defendant,

v.

CASE NO. 00 C 120

JUDGE WILLIAM J. HIBBLER

ATALLAH S. YANNI, an Illinois resident,
ELIAS S. YANNI, a California resident, and
INTERNATIONAL COMPUPARTS, an
Illinois entity,
    Defendants/Counter-Plaintiff.

## MEMORANDUM OPINION AND ORDER

In this diversity action between Plaintiff Yaseen Al-Oumi ("Yaseen"), a Kuwait national, and Defendants Atallah Yanni ("Art") and Elias Yanni ("Elias") (collectively referred to as "the Yannis")[1], both residents of the United States[2], each side asserts an entitlement to the $250,000 remaining after investment deals the parties were pursuing fell through. For the following reasons, Yaseen's motion for partial summary judgment on his Complaint (doc. #14) is **denied**, and his motion for summary judgment on Elias' counterclaims (doc. #15) is **granted** in part and **denied** in part.

## BACKGROUND

The facts are taken from the Local Rule 56.1 statements of material fact submitted by the parties[3]

---

[1] Yaseen also names as a defendant the Yannis' company located in the United States, International Compuparts.

[2] For purposes of diversity jurisdiction the relevant question is not the residence of Defendants, but rather their citizenship. *See* 28 U.S.C. § 1332 (a). Although neither side disputes in the motion papers that the parties are diverse in citizenry, this Court nonetheless admonishes counsel to specifically set forth in the pleadings facts demonstrating a basis for asserting federal jurisdiction over their case.

[3] Elias objects to this Court's consideration of Yaseen's motion on the basis that Yaseen did not submit a separate statement of material facts as required by Local Rule 56.1(a)(3), but instead incorporated the statement consisting of short numbered paragraphs into the body of his supporting memorandum of law. However, the Court sees no reason to reject these documents just because Yaseen may have committed a technical violation of the Local Rules.

and are not disputed unless otherwise specified. Sometime in either the mid-1980s or early 1990s, Elias started a company, Sinam Integrated Systems ("Sinam"), in Kuwait. Because Kuwaiti law required that one of its citizens hold the majority ownership in any business, Elias owned only 49% of Sinam, while his silent partner, Ghassan Abel ("Abel"), a Kuwait national, owned the remaining 51%. In April 1993, Yaseen purchased Abel's majority interest in Sinam and became Elias' business partner ("1993 Contract"). Elias contends the 1993 Contract was signed in April, but not entered in the Kuwaiti commercial registry until August 1993. In addition, Elias claims that even though the 1993 Contract does not identify a purchase price for Abel's ownership interest, Yaseen orally agreed to pay Elias 75,000 KD[4].

Yaseen eventually took over Sinam's operations, but in 1996, Elias began to question Yaseen's management of the company. Finally, in August 1997, deciding it best to part ways, Yaseen agreed to buy Elias' 49% interest in Sinam for 35,000 KD ("1997 Contract"). Notwithstanding the express contract, Elias claims Yaseen also orally reaffirmed his earlier obligation to give Elias 75,000 KD. Furthermore, Section 5 of the 1997 Contract contains a release provision which provides as follows:

> The first [Yaseen] and fourth [Elias] parties shall discharge each other from the liability of all rights and obligations resulted from the establishment of the company among them from the date of establishment until the date of expiry of this contract . . . .

At his deposition, Elias admitted that in light of Section 5 he had waived any rights he had against Yaseen concerning Sinam. Finally, Section 12 of the 1997 Contract states that "[t]he validity of this contract shall be effective from the date of signing thereof and its entry in the commercial registry." The 1997 Contract identifies a date of signing, but unlike the 1993 Contract does not specify a subsequent date of entry in the Kuwaiti commercial registry.

With his interest in Sinam disposed of, Elias turned his attention to investment opportunities in the United States. During the fall of 1997, Elias, Art and Yaseen discussed the possibility of investing in a strip mall on Kedzie Street in Chicago. Consequently, in January 1998 Yaseen wired $550,000 to Art in Illinois to be used as equity in purchasing the strip mall. However, the seller rejected the Yannis' offer, thereby killing the deal. Art then, allegedly at Yaseen's direction, transferred $300,000 back to Yaseen in Kuwait, and the remaining $250,000 to Elias' Illinois bank account. According to Elias, he received

---

[4]One (1) KD is roughly equivalent to 3.33 U.S. dollars.

the $250,000 in satisfaction of Yaseen's outstanding debt from the 1993 Sinam transaction. Additionally, Elias claims, Yaseen promised to provide the Yannis with additional funds for investments in the United States or elsewhere. Yaseen, in contrast, contends he demanded Art return the full $550,000. In any event, shortly after the strip mall deal failed, the parties began considering a joint venture in a Taco Maker franchise. In March 1998, Yaseen requested and Elias sent him a copy of the franchise contract for review. Elias also deposited $14,700 (of the $250,000) with Taco Maker. In the end, though, that deal was never consummated, and Taco Maker refunded the full deposit to Elias.

By May 1998, communication had ceased between Yaseen and Elias. Believing the $250,000 rightfully belonged to him, Elias retained the funds and, in July 1998, used the money to start a family business in Lebanon, J&J Distributorship, in which Yaseen has no interest. In October 1999 Yaseen, through his attorney, tendered a written demand to the Yannis for the $250,000. When the Yannis refused to comply, this litigation ensued. Yaseen filed suit first, alleging misrepresentation (Count I), conversion (Count II), breach of contract (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count V), and federal securities fraud (Count VI). In response, Elias countersued, claiming breach of contract (Count I), fraud (Count II), breach of fiduciary duty (Count III), accounting (Count IV), and breach of contract to form a partnership (Count V). Yaseen now moves for summary judgment on Counts II-IV of his Complaint, contending the parties agree the Yannis have not returned the money Yaseen gave them, and thus he prevails on those claims as a matter of law. In addition, Yaseen moves for summary judgment on Elias' counterclaims, arguing that the release in the 1997 Contract, as a matter of law, precludes Elias from asserting any claims against Yaseen arising out of their Sinam partnership.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must consider the evidence in the light most favorable to the nonmovant and all justifiable inferences are resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party who bears the burden of proof on an issue may not rest on the pleadings, but must

affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## ANALYSIS

### I. Plaintiff's Motion for Partial Summary Judgment on his Complaint[5]

#### A. Conversion (Count II)

Yaseen contends the Yannis converted his $250,000 when they refused to return the funds to him after the strip mall investment deal was not consummated, and instead used the money to purchase a family business in Lebanon. "A conversion is any unauthorized act that deprives a person of his or her property permanently or for an indefinite time." *Colonial Funding, LLC v. American Empire Co.*, 308 Ill. App. 3d 376, 378, 719 N.E.2d 1098, 1100 (1st Dist. 1999). To establish a cause of action for conversion, Yaseen must prove (1) the Yannis wrongfully and without authorization assumed control, dominion, or ownership over his property; (2) he has a right to the property; (3) he has an absolute and unconditional right to the immediate possession of the property; and (4) he has made a demand for the possession of the property. *Id.*

Yaseen argues he is entitled to summary judgment on this count because it is undisputed the Yannis retained his money even after the investments did not materialize. No doubt the Yannis concede they have not returned the $250,000, but the controlling question here is whether their retention of the funds was *unauthorized and wrongful*. The Yannis contend that one of the reasons Yaseen permitted them to retain those funds was for future investment ventures. Indeed, it was in January 1998, when the strip mall purchase fell through and Art, purportedly at Yaseen's direction, subsequently divided Yaseen's $550,000 between Yaseen and Elias. And then, within two months, these businessmen were seriously considering

---

[5]The parties presume Illinois law governs this dispute. Because the subject matter of Yaseen's complaint arose within Illinois, and a federal court sitting in diversity case must apply the substantive law of the state in which it sits, *see generally Erie R.R. v. Tompkins*, 304 U.S. 64 (1939), this Court likewise concludes Illinois law should apply.

investing in a Taco Maker franchise, as Yaseen reviewed the franchise agreement and Elias deposited a portion of the $250,000 with the franchisor. Those facts, coupled with the lack of evidence in the record demonstrating any objection by Yaseen at that time to Elias receiving the $250,000, supports the Yannis' argument that Yaseen agreed to put those funds towards another investment. Thus, the Yannis have demonstrated a triable issue of material fact on this point. *See e.g., Anderson*, 477 U.S. at 248 (disputes over facts that affect the outcome of the suit will properly preclude the entry of summary judgment).

What is less clear, however, is whether Elias was authorized to keep the $250,000 even after the Taco Maker franchise deal did not materialize. Yaseen claims he made numerous requests for the return of the funds, but he has produced no documentation to support that contention, except for the October 1999 demand letter from his lawyer written over 18 months after Elias and Yaseen severed their business relationship. Furthermore, the Yannis maintain Yaseen made no such demands. As the moving party seeking summary judgment, Yaseen bears the initial burden of demonstrating the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because Yaseen's submissions in support of his summary judgment motion do not foreclose the possibility that the Yannis' retention of the funds was neither wrongful nor unauthorized, summary judgment is not warranted. Given that genuine material factual disputes exist on a key element of Yaseen's conversion claim, summary judgment must be denied as to Count II of the Complaint.

### B. Breach of Contract (Count III)

Yaseen contends Art and Elias breached an oral agreement to return the entire $550,000 to him in the event the strip mall purchase did not occur. To succeed on a breach of contract claim, Yaseen must prove (1) the existence of a contract, (2) performance of his obligations, (3) the Yannis breached the contact, and (4) resultant injury. *Talbert v. Home Savings of America*, 265 Ill. App. 3d 376, 379, 638 N.E.2d 354, 357 (1st Dist. 1994). "For an oral contract to exist, the parties must have had a meeting of the minds with respect to the terms of the agreement and must have intended to be bound to the oral agreement." *Podolsky v. Alma Energy Corp.* 143 F.3d 364, 369 (7th Cir. 1998). Clearly some kind of agreement existed between the parties as evidenced by Yaseen wiring $550,000 to Art. The exact terms of that agreement, however, is where the parties differ. Yaseen claims he provided the money for purchase

of the strip mall only, while the Yannis insist the funds were to be used to investigate various potential business ventures, one of which was the strip mall.

Certainly Yaseen's actions after the strip mall transaction failed, i.e., allowing Art to transfer $250,000 to Elias' account and pursuing the Taco Maker franchise with the Yannis, are consistent with the Yannis' version of the oral arrangement. As such, this Court is once again confronted with a situation where Yaseen, the party moving for summary judgment, simply has not satisfied his initial responsibility of proving an entitlement to judgment in his favor as a matter of law. Indeed, that the parties set forth markedly different accounts of the terms of the oral agreement evinces a lack of meeting of the minds necessary to prove the very existence of an oral contract. Summary judgment therefore is denied as to Count III of the Complaint.

### C. Unjust Enrichment (Count IV)

To establish unjust enrichment resulting from the Yannis' retention of the $250,000, Yaseen must show: (1) the Yannis unjustly retained a benefit, (2) to Yaseen's detriment, and (3) the Yannis' retention of that benefit violates fundamental principles of equity. *B & B Land Acquisition, Inc. v. Mandell*, 305 Ill. App. 3d 1068, 1073, 714 N.E.2d 58, 62 (2d Dist. 1999). As with Yaseen's conversion and breach of contract claims, he has not presented enough evidence establishing a clear intent and purpose concerning the disposition of the funds at issue here. Thus, this Court is not persuaded the Yannis' retention of the $250,000 was even wrongful, let alone in violation of equitable principles of law. Accordingly, summary judgment as to Count IV is also denied.

## II. Plaintiff/Counter-Defendant's Motion for Summary Judgment on the Counterclaims

### A. Breach of Contract, Fraud, Breach of Fiduciary Duty, Accounting (Counts I-IV)

Elias raises a host of claims against Yaseen arising out of their rights and obligations as partners in Sinam. Essentially, in Counts I through IV of his Countercomplaint, Elias contends Yaseen mismanaged Sinam and failed to pay him 75,000 KD for Abel's ownership interest as promised. Pointing to the 1997 Contract, Yaseen maintains the release in Section 5 is binding, and therefore Elias cannot proceed on claims against him regarding the partnership.

Yaseen maintains there is no question as to the effect of the release since Elias conceded at his

-6-

deposition that he understood he was waiving any and all claims he may have had against Yaseen resulting from their Sinam partnership. Elias responds that this Court should not rely on his deposition testimony because he did not have the benefit of an interpreter and he misunderstood some of the questions, but the Court does not find this excuse to be persuasive, particularly because Elias did have counsel present to assist him. The more convincing argument made by Elias, though, is that the release may be ineffective because the 1997 Contract has not been properly registered.

According to Section 12 of the 1997 Contract, the agreement is effective "from the date of signing thereof <u>and</u> its entry in the commercial registry." (emphasis added). Yaseen points to section 13 of the 1997 Contract which states the contract was drawn up on August 2, 1997, and registered in the incoming letters on August 4, 1997. What is confusing, though, is that the 1997 Contract was apparently signed on August 11, 1997 – a week *after* Yaseen says it was registered. Elias maintains entry of the contract in the commercial registry was to occur after, not before, the date of signing, but he never authorized any such registration because Yaseen did not tender the balance of the purchase price (15,000 KD) in a timely manner. In support of his statement of what Section 12 requires for an agreement to be deemed valid and enforceable, Elias directs the Court's attention to the 1993 Contract, which states that it was signed on April 26, 1993, and registered on July 8, 1993.

Unfortunately neither Yaseen nor Elias cites any Kuwaiti law in support of his interpretation of Section 12 of the 1997 Contract.[6] Thus it is difficult for this Court to decide which position is accurate. Nevertheless, this Court errs as it must on the side of caution in favor of the non-moving party, Elias. Yaseen has not established to this Court's satisfaction the validity of the 1997 Contract or the release

---

[6]Kuwaiti law guides this Court's analysis as to whether the release bars Elias' claims. Sinam is a company that operated in Kuwait. At the time Elias and Yaseen agreed to act as business partners, Yaseen was a Kuwaiti citizen, and it appears that Elias, although not a national of Kuwait, was domiciled in Kuwait. Furthermore the release is contained in an agreement that was written in Arabic and signed by the parties in Kuwait. Moreover, the parties undoubtedly anticipated performance of their duties in Kuwait. A district court exercising jurisdiction in a diversity contract action applies the choice of law rules of the state in which it sits. *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998). In deciding if a contract (or release) is valid, Illinois favors "the jurisdiction with the most significant contracts with the transaction and the parties." *Id.* Considering that, as set forth above, all of the relevant circumstances surrounding the release occurred in Kuwait, it is clear Kuwait has a superior interest in this matter. *See id.* at 488-89.

provision. As such, issues of genuine material fact exist. Therefore his motion for summary judgment on Counts I-IV of the Countercomplaint must be denied.

### B. Breach of Contract to Form Partnership (Count V)

Elias also claims the parties formed an oral contract whereby Yaseen agreed to help fund a joint venture for investments like the Taco Maker franchise. By failing to supply additional funds in excess of the $250,000 allegedly owed from the 1993 Sinam purchase, Elias contends, Yaseen breached their contract, thereby injuring Elias who had expended significant time and money on the Taco Maker franchise. In addition, Elias maintains he was then forced to proceed with the J&J Distributorship without the promised financial assistance of Yaseen.

The Court agrees with Yaseen that this claim cannot withstand summary judgment for two reasons. First, Elias has not shown a valid contract exists. There is no significant probative evidence here indicating there was "an offer, an acceptance, and consideration" on the terms Elias sets forth. *See Talbert*, 265 Ill. App. 3d at 380; 638 N.E.2d at 356. Indeed, the exact terms of the agreement are vague. Certainly the evidence presented suggests the parties agreed to consider business investments in the United States, but there is no proof of concrete promises by Yaseen to fund whatever venture Elias sought to undertake. And second, Elias has not shown any resultant injury due to Yaseen's failure to supply additional funding. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001); *Talbert*, 265 Ill. App. 3d at 379, 638 N.E.2d at 357. Concerning the Taco Maker franchise, Elias recovered all of the deposit when he pulled out of the deal. He now claims to have incurred substantial investigative costs, but offers nothing to back up that contention. Furthermore, recovery for alleged lost profits is highly speculative. Moreover, Elias in fact used funds from Yaseen to start his own franchise business, J&J Distributorship. Thus there is no evidence Elias suffered injury. Consequently, because Elias has failed to come forward with evidence sufficient to establish two essential elements of his breach claim, Yaseen is entitled to summary judgment on Count V of the Countercomplaint. *See Celotex*, 477 U.S. at 322-23.

## CONCLUSION

Accordingly, the motion for summary judgment on Counts II-IV of the Complaint is denied, and the motion for summary judgment is granted as to Count V of the Counterclaim and denied as to Counts I-IV.

**IT IS SO ORDERED.**

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

**DATED: March 26, 2002**